## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ERIC NOBLE, | Case No. 1:20-CV-594 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| THE PUBLIC LIBRARY OF CINCINNATI AND HAMILTON COUNTY, et al., | **OPINION & ORDER** |
| Defendants. | |

This matter is before the Court on a motion for summary judgment by Defendants, the Public Library of Cincinnati and Hamilton County ("Library"); the Library Board of Trustees; Monica Donath Kohn; Elizabeth H. LaMacchia; Karen R. Clemons; Nadine L. Allen; Robert G. Hendon; Gregory W. Olson; Diane Cunningham Redden; Paula Brehm-Heeger; and Kyla Hardin. (Doc. 12). Plaintiff Eric Noble has responded in opposition, (Doc. 15), and Defendants have replied, (Doc. 17). Also before the Court is Noble's motion for summary judgment. (Doc. 13). Defendants have responded in opposition, (Doc. 14), and Noble has replied, (Doc. 16).

For the following reasons, the Court will grant summary judgment in favor of Defendants.

## I.  BACKGROUND

In late-May 2020, Noble—then employed by the Library as a security guard—reposted a meme[1] on his Facebook profile page depicting a car running over stick-figure human characters and reading "ALL LIVES SPLATTER," and "NOBODY CARES ABOUT YOUR PROTEST." (Doc. 12, PageID 532). Noble was not working or on Library property when he reposted the meme, but his Facebook profile listed him as a "Library Public Safety Officer." (*Id.*, PageID 521). Another Library employee came across the post and expressed concern—on their own behalf and on behalf of other Library employees—in an email to Defendant Hardin. (Doc. 13, PageID 552-53).

On June 2, 2020, Noble met with Library human resources representatives, who explained to him that "it was not a matter of whether we agreed or disagreed with the post," but that it violated the Library's policies on harassment in the workplace, particularly "due to his classification" as a public safety officer. (Doc. 12, PageID 547). Notes from the meeting reflect that Noble "would only say that he thought it was funny" when questioned about the meaning or intent of the post. (*Id.*). After the meeting, Noble was placed on administrative leave, (Doc. 2, PageID 13), and eight days later, the Library terminated Noble's employment, (*see* Doc. 12, PageID 542).

Noble alleges that his employment was terminated because the Library "had a policy of suppressing speech critical of the Black Lives Matter [movement] or other social justice movements," and argues that Defendants discriminated against him in violation of the First Amendment. (Doc. 2, PageID 13). Defendants counter that Noble's employment

---

[1] As relevant here, a "meme" can be defined as "an amusing or interesting item (such as a captioned picture of video) or genre of items that is spread widely online especially through social media." *Meme*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://merriam-webster.com/dictionary/meme (last visited June 20, 2023).

was lawfully terminated because his action was disruptive and in violation of the Library policy on harassment and intimidating behavior. To that end, Defendants argue that they are entitled to summary judgment because Noble's post was not protected under the First Amendment and they were acting in the best interests of the Library, its employees, and its patrons. (Doc. 12, PageID 525-30).

## II.    STANDARD OF LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a fact is "material" only when its resolution affects the outcome of an action, and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). This Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the moving party has satisfied its initial burden of showing the absence of a genuine issue of material fact, the nonmoving party may not rest on the mere allegations in the pleadings, but must instead put forth specific facts showing that there is a genuine issue for trial. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This standard of review remains the same for reviewing cross-motions for summary judgment. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441-42 (6th Cir. 2021); *see Harris v. City of Saginaw*, 62 F.4th 1028, 1032-33 (6th Cir. 2023) ("In review of the *defendant's* motion, we accept the *plaintiff's* view of the facts as true and draw all reasonable inferences in favor of the *plaintiff*," whereas "in review of the *plaintiff's* motion, we accept the *defendant's* view of

the facts as true and draw all reasonable inferences in favor of the *defendant*.").

To put forth a viable First Amendment retaliation claim, a plaintiff must establish that "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two." *Bennett v. Metro. Gov't of Nashville & Davidson County*, 977 F.3d 530, 537 (6th Cir. 2020) (cleaned up). In the case of a public employee who alleges that his employment was terminated in retaliation for engaging in protected speech, a court must determine whether "the relevant speech addressed a matter of public concern," and if so, "must balance the interests of the public employee, 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

## III.   ANALYSIS

The Court will turn initially to the balancing of interests and apply the *Pickering* test. *See Gillis v. Miller*, 845 F.3d 677, 684 (6th Cir. 2017). Specifically, it is for the Court to determine whether Noble's post (1) impaired discipline by superiors or harmony among coworkers; (2) had a detrimental impact on close working relationships for which personal loyalty and confidence are necessary; (3) impeded the performance of Noble's duties or interfered with the regular operation of the Library; or (4) undermined the Library's mission. *Bennett*, 977 F.3d at 539-40; *see also Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008) (noting that the public employer must reach its conclusion in good faith).

Defendants contend that even if Noble's speech addressed a matter of public concern (which they dispute in the first instance), "[a]nalysis of the balancing test leads to the inescapable conclusion that Noble's alleged free speech interest is clearly and substantially outweighed by efficiency interests of the Library." (Doc. 12, PageID 529). For his part, Noble claims that his "speech led to 'mere disharmony' insufficient for Defendants['] interests to outweigh his right to speak on a matter of public concern," and argues that Defendants' "purportedly 'legitimate justification' is simply made of whole cloth." (Doc. 13, PageID 559, 563).

A review of the record leads to the conclusion that, even if no disruption had occurred, Defendants still reasonably predicted a disruption because the meme Noble posted depicted an individual hitting protestors with a car, and Noble interfaced with patrons and had access to Library vehicles at a time when actual protests were ongoing. (*See* Doc. 12, PageID 537-38). Noble misses the point entirely when he asserts that "despite having easy access to his own personal vehicle, [he] did not go near the protests, much less attempt to hit anybody with his car." (Doc. 13, PageID 561). Defendants were not required "to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action," *Gillis*, 845 F.3d at 687 (quoting *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 833-34 (8th Cir. 2015)), especially in light of the fact that Noble was charged with maintaining public safety, *see, e.g.*, *id.* at 684.

In short, it was sufficient that Noble's post caused documented disharmony with his coworkers and had a detrimental impact on his working relationships, (*see* Doc. 12, PageID 543; Doc. 14, PageID 618-20), and risked harm to the Library's standing and trust

5

among members of the community, (*see* Doc. 12, PageID 542). Moreover, no matter how much Noble may have "acted with the poise and decorum befitting his position," (Doc. 13, PageID 561), his job performance *prior to* the misconduct in question does not bear on whether Defendants had a legitimate efficiency interest in terminating his employment *after* the post. This is so because, as should be obvious, the relevant inquiry looks to the facts as they were when the Library took the adverse employment action against Noble, and not at some other fixed point in the past.

The balancing of interests ultimately favors Defendants, with the record showing that they made their determination in good faith and did not run afoul of "[t]he limited First Amendment interest" at play. *Connick v. Myers*, 461 U.S. 138, 154 (1983). Accordingly, because that balancing of interests is dispositive here, Defendants' motion for summary judgment is **GRANTED**, and Noble's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

    _ _/s/ Michael R. Barrett_ _ _
Michael R. Barrett
United States District Judge